UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Mack Industries, Ltd., et al., | ) | |
| | ) | No. 17 B 09308 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Ronald R. Peterson, as Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 A 00436 |
| | ) | |
| Ferguson Enterprises Inc. d/b/a Ferguson Heating & Cooling, | ) | |
| | ) | |
| Defendant. | ) | Judge Carol A. Doyle |

**Memorandum Opinion**

Chapter 7 trustee Ronald Peterson filed this adversary proceeding against Ferguson Enterprises Inc., d/b/a/ Ferguson Heating and Cooling ("Ferguson"). He seeks to recover alleged fraudulent transfers made by debtor Mack Industries Ltd. ("Mack") to Ferguson. The trustee alleges that Mack purchased plumbing supplies from Ferguson but then installed them in properties that Mack did not own. He contends that these transfers were part of a fraudulent scheme to deplete Mack's assets. He also seeks to recover some transfers as preferences.

Ferguson moved to dismiss the amended complaint. It argues that the trustee has not alleged a plausible claim for fraudulent transfer based on either constructive fraud or actual

1

fraud. It also argues that the trustee has failed to properly plead the elements of a preference claim. Ferguson is correct regarding the claim based on constructive fraud and the preference claim. Both claims will be dismissed. Ferguson's motion to dismiss the claim based on actual fraud will be denied.

1. <u>Background and Amended Complaint</u>

The trustee filed a complaint against Ferguson alleging two claims to avoid fraudulent transfers and a claim to avoid preferential transfers. The court granted a motion to dismiss a similar adversary proceeding in *Peterson v. McClean (In re Mack Industries, Ltd.)*, No. 19-ap-00433, 2019 Bankr LEXIS 3603 (Bankr. N.D. Ill. Nov. 20, 2019). The fraudulent transfer claims in this case were very similar to those in *McClean*. The trustee consented to the dismissal of his complaint against Ferguson. He was granted leave to amend and he filed an amended complaint. Ferguson now moves to dismiss the amended complaint.

In the amended complaint, the trustee again alleges two claims to avoid fraudulent transfers and a claim to avoid preferential transfers. He seeks to recover payments of approximately $1.9 million that Mack made to Ferguson between November 2012 and February 2017. Exhibit A to the amended complaint shows each transfer to Ferguson in the time period addressed by the complaint. The transfers total approximately $2.1 million. Exhibit B to the amended complaint contains a list of invoices for the transfers identified in Exhibit A. It identifies specific properties and who owned them. The trustee acknowledges that some of the supplies purchased were used in properties owned by Mack or American Residential Leasing Company LLC, an unsecured creditor of Mack. He is not seeking to recover those transfers. He

alleges that the remaining $1.9 million in payments were for plumbing supplies that Mack used in properties owned by parties other than Mack or American Residential.

In Count I, the trustee alleges that the $1.9 million in payments were constructively fraudulent under the Illinois Uniform Fraudulent Transfer Act and § 548(a)(1)(B) of the Bankruptcy Code. He contends that Mack used the plumbing supplies in properties owned by third parties so it received no value for the transfers. In Count II, the trustee alleges that Mack made the payments with actual intent to defraud. He bases this claim primarily on a statement allegedly made by a vice president of Mack in June 2014 threatening American Residential that if it did not renegotiate a significant contract, Mack would dissipate its assets to prevent American Residential from collecting from it. In Count III, the trustee seeks to recover approximately $23,000 in transfers as preferences under § 547 of the Bankruptcy Code.

Regarding the actual fraud claim in Count II, the amended complaint alleges as follows. Mack's primary business was "flipping houses" - buying properties, improving them, and selling or renting them. Amended Complaint ¶ 8. American Residential purchased hundreds of properties from Mack, which then leased the properties back from American Residential under a Master Lease Agreement ("Agreement") and sublet them to tenants. In the summer of 2014, Mack began to claim that it could not meet its obligations under the Agreement and sought to renegotiate it. When American Residential resisted, Erik Workman, Mack's Vice President of Sales and Marketing, told Christopher Byce, formerly Senior Vice President of Investments of American Residential's prior parent company, that "the Debtor would transfer its assets to related entities for nothing in return to hinder American Residential's ability to exercise its legal remedies as a creditor." Amended Complaint, ¶ 30. By September 2014, Mack had stopped

3

making payments under the Agreement. Amended Complaint ¶ 34. In December 2014, Mack sent American Residential a proposed revised contract that Mack said was, essentially, not negotiable. American Residential refused to change the Agreement.

Even before Workman made his threat about dissipating assets, Mack began to "prepare for a possible breakdown in the business relationship." Amended Complaint ¶ 39. "In the months leading up to and during the negotiations with American Residential, the debtor had already begun dissipating its assets." ¶ 40. Before 2013, the McClellands, who own Mack and many related entities, ran almost the entire real estate business in Mack's name. Amended Complaint ¶ 41. In 2013, the McClellands began to "create new entities and to divert business opportunities and assets from the Debtor to those entities." Amended Complaint ¶ 42. They created at least 15 new entities in 2013, at least four new entities in 2014, at least six new entities in 2015, and at least two new entities in 2016. Amended Complaint ¶ 43. Mack owned five of these entities: Mack Industries II LLC, Mack Industries III LLC, Mack Industries IV LLC, Mack Industries V LLC, and Mack Industries VI LLC. Amended Complaint ¶ 44. All the other new entities were owned by James K McClelland, James H. McClelland (James K. McClelland's son), or both. Amended Complaint ¶ 45.

Although Mack owned some real estate after 2013, "the vast majority of real estate acquired for flipping was acquired by the new entities." Amended Complaint ¶ 47. Mack also transferred real estate from itself to the new entities. Amended Complaint ¶¶ 47, 48. The McClellands thereby reduced the assets "that the debtor had that could be collected by American Residential." Amended Complaint ¶ 48. Mack also "drew down" on its own assets to benefit the other entities. Amended Complaint ¶ 49. It paid contractors to work on and improve real

4

property owned by the other entities, and paid bank loans incurred by the other entities. Complaint ¶50. The McClellands also "extracted" at least $10.7 million in cash from the debtor and other entities. Amended Complaint ¶ 52. Mack concealed its dissipation from American Residential. After June 2014, it failed to provide American Residential with Quarterly Statements required under the Agreement detailing its income. Amended Complaint ¶¶ 54, 55. American Residential tried to take over its own properties in 2016 but Mack refused to provide information about the subtenants. Amended Complaint ¶ 58. In March 2016, American Residential sued Mack and related entities in state court. Amended Complaint ¶ 37.

2. Constructive Fraud

Ferguson argues that the claim in Count I based on constructive fraud must be dismissed because the trustee failed to allege an essential element of his claim: that Mack did not receive reasonably equivalent value for the payments. Ferguson asserts, and the trustee does not contest, that the complaint and attachments show that Mack ordered and received the plumbing supplies and paid Ferguson a reasonable price for them. Ferguson therefore contends that Mack received reasonably equivalent value for the payments. It argues that what Mack chose to do with the goods does not affect the objective value it gave Mack in exchange for the money. The trustee responds that *Mack* did not receive any value because the plumbing supplies were installed in properties that Mack did not own. Ferguson is correct. Mack received reasonably equivalent value for the payments to Ferguson.

The trustee brings his constructive fraud claim under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5(a)(2), 6(a), and 8(a), via § 544(b)(1) of the Bankruptcy Code, as

5

well as under § 548(a)(1)(B) of the Bankruptcy Code. A plaintiff seeking to avoid a fraudulent transfer based on constructive fraud under § 548(a)(1)(B) must plead and prove the following: (1) a transfer of the debtor's property or interest; (2) made within two years before the date the bankruptcy petition was filed; (3) for which the debtor received less than a reasonably equivalent value in return; and (4) that the debtor (a) was insolvent on the date of the transfer or became insolvent as a result, (b) engaged in business or a transaction as a result of which the debtor's remaining capital was unreasonably small, or (c) intended to incur, or should have known he would incur, debts he would be unable to pay. *KHI Liquidation Trust v. C. Goshy Enterprises, Inc. (In re Kimball Hill, Inc.)*, No. 10-ap-998, 2012 WL 5880657, at *5 (Bankr. N.D. Ill. Nov. 19, 2012); *Cox v. Grube (In re Grube)*, No. 09-ap-8111, 2012 WL 3263905, at *4 (Bankr. C.D. Ill. Aug. 9, 2012); *Martino v. Edison Worldwide Capital (In re Randy),* 189 B.R. 425, 440 (Bankr. N.D. Ill. 1995). Under the IUFTA, the elements are the same but the statute of limitations is four years. 740 ILCS 160/5, 160/10; *Reinbold v. Morton Community Bank (In re Mid-Illini Hardwoods, LLC*), 576 B.R. 598, 604 (Bankr. C.D. Ill 2017)*; see Zimmerman v. Paulsen*, 524 F. Supp. 2d 1077 (N.D. Ill. 2007).

The standard for reasonably equivalent value is the same under Illinois law and § 548(a). *See Baldi v. Samuel Son & Co, Ltd.,* 548 F.3d 579, 580 (7th Cir. 2008); *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer (In re Jumer's Castle Lodge Inc.)*, 472 F.3d 943, 947 (7th Cir. 2007) ("Because the IUFTA is a uniform act, we may look to cases decided under 11 U.S.C. § 548, as well as cases interpreting other states' versions of the [UFTA] to determine the meaning of the phrase 'reasonably equivalent value.'").

Determining whether a debtor received reasonably equivalent value for the transfer

6

involves a three-part inquiry: (1) did the debtor receive some value, (2) was the value received in exchange for the transfer by the debtor, and (3) did the value received by the debtor have a reasonable equivalence to what the debtor transferred. *Mid–Illini Hardwoods*, 576 B.R. at 604. Here, the trustee does not dispute that Mack received the goods and paid a reasonable price for them, so the second and third inquiries are not contested. The parties dispute whether the facts alleged can establish that *Mack* received value when Mack used the supplies in properties owned by third parties.

The focus of the inquiry regarding reasonably equivalent value "must be on the specific transaction the trustee seeks to avoid, *i.e.*, the *quid pro quo* exchange between the debtor and the transferee, rather than an analysis of the transaction's overall value to a debtor as it relates to the welfare of the debtor's business." *Balaber-Strauss v. Sixty-Fve Brokers (In re Churchill Mort. Inv. Corp.),* 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000). Courts seek to ensure that there is an exchange of property that is a fair equivalent and "not disproportionately small as compared with the value of the property or obligation obtained." *Id.* Courts examine "the objective value of the goods and services provided rather than the impact the goods and services had on the bankrupt enterprise." *Trauner v Delta Air Lines, Inc. (In re Think Retail Solutions, LLC*), No.17-ap-5078, 2019 WL 2912717 at *16 (Bankr. N.D. Ga. 2019) (quoting *Orlick v. Kozyak (In re Financial Federated Title & Trust, Inc.)*, 872 F.3d 1235, 1248 (11th Cir. 2017) and *Merrill v. Allen (In re Universal Clearing House Co.*, 60 B.R. 985, 998-99 (D. Utah 1986)); *PSN Liquidating Trust v. Intelsat Corp (In re PSN USA, Inc.)*, 615 F. App'x 925, 932 (11th Cir. 2015 (the debtor may receive value even if the transfer increases its insolvency). "[U]nder § 548, in assessing the "value" of property, goods or services provided directly to the debtor, the question is not whether

the debtor subjectively benefitted from the property it received; the operative question is whether the property, goods, or serviced provided had objective value." *McHenry v. Dillworth (In re Caribbvean Fuels Am., Inc.)*, 688 F. App'x 890, 894-95 (11th Cir. 2017).

Courts determine the objective value as of the date of the transfers, not on a post-transfer basis that considers whether the purchase was wise or impacted the financial picture of the debtor. *Think Retail*, at *16. "Courts will not look with hindsight at a transaction because such an approach could transform fraudulent conveyance law into an insurance policy for creditors." *Kipperman v. Onex Corp.*, 411 B.R. 805, 837 (N.D. Ga. 2009). This is true even when the transaction in question harmed creditors and diminished the debtor's bankruptcy estate. As the *Churchill Mort.* court noted, debtors often engage in "improvident purchases or expenditures which have a detrimental effect on creditors and may even be a precipitating cause of bankruptcy." *Id*. at 681. "The fact that transactions may 'exacerbate the harm to creditors and diminish the debtor's estate' from an overall perspective does not mean that the debtor received less than reasonably equivalent value in respect of each particular transaction." *Id.*

In *Churchill Mort. Inv. Corp.,* a trustee sought to avoid transfers made to various brokers who originated mortgages and solicited investors in a debtor that was operating a Ponzi scheme. The trustee alleged that the payments to the brokers were avoidable as fraudulent transfers based on actual and constructive fraud because the business generated by the brokers clothed the debtor's fraudulent enterprise in an aura of respectability and enabled the corrupt management to continue its scheme. The court held that each transaction must be evaluated based solely on the value given and received by the debtor. The court determined that the debtor paid a reasonable amount for the services it received so it concluded that the debtor received reasonably equivalent

8

value without considering how the services affected the debtor's ability to carry out its fraud.

The analysis regarding reasonably equivalent value does not change when a third party benefits from the transfer. In *Think Retail,* 2019 WL 2912717, the court held that a debtor received reasonably equivalent value from an airline when the debtor's principal purchased airline tickets for her personal use and the personal use of others. The debtor got reasonably equivalent value for the airline tickets because it controlled all the rights it purchased from the airline, including the right to a seat on a flight, the right to designate the name of the passenger for the ticket, the right to cancel the flight, and the right to modify the scheduled travel date and destination. The use of those rights by third parties did not negate the objective value given by the airline to the debtor.

In fact, even when a debtor pays the debt of another party, it may nevertheless receive reasonably equivalent value. Though the general rule is that a debtor does not receive reasonably equivalent value by paying the debt of a third party, courts still examine the facts and circumstances to determine whether the debtor indirectly got reasonably equivalent value, such as through multi-party transactions. *Mid-Illini Hardwoods,* 576 B.R. at 607.

Here, the trustee does not contend that Mack paid Ferguson more than the plumbing supplies were worth or that Mack paid the debt of another party. Instead, the trustee argues that Mack received nothing, even though Ferguson provided exactly what Mack paid for, based solely on what Mack did with the purchased goods. The trustee's argument fails.

As explained above, in determining whether Mack got reasonably equivalent value, the court must examine only the specific transactions at issue, not Mack's overall financial condition or any fraudulent scheme that Mack's management might have been perpetrating. It is

undisputed that Ferguson provided real value to Mack for the payments it received. Mack ordered plumbing supplies, paid for them, and became the sole owner of them. This case involves a simple *quid quo pro* - goods exchanged for money. Like the airline tickets purchased in *Think Retail*, Mack got what it paid for in each transaction: plumbing supplies that it could use any way it chose. The fact that Mack may have used the supplies it owned to benefit others or that Mack may have been engaging in an overall scheme to deplete its assets does not diminish the value Ferguson provided to Mack.

The trustee has failed to cite a single case in which an arms-length transaction between a debtor and a vendor in which a reasonable amount was paid for goods actually provided was avoided as constructively fraudulent based on what the debtor chose to do with those goods. It cites only an unpublished order in *Krudy v. Chase Bank USA, N.A. (In re Rainmaker Group, Inc.)*, No. 12-ap-50104, 2013 Bankr. LEXIS 1483 (Bankr. S.D. Ind. 2013) that did not involve the sale of goods to a debtor. In *Krudy*, a chapter 7 trustee filed a "bare-bones" complaint alleging a fraudulent transfer claim against a corporate debtor's principals who had incurred corporate debt for personal purchases. The court concluded that the trustee must be pursuing a constructive fraud claim under Indiana law and that he sufficiently pled the element of lack of reasonably equivalent value. The court stated that "[f]raudulent transfer statutes exist to undo the damage done by bad-acting corporate principals who use the corporate credit card to incur personal debt and use corporate funds to pay for it." *Id*. at *7. The court cited no authority for this statement. It is both unsupported and incorrect. As explained above and in myriad cases, the purpose of the law of constructive fraudulent conveyance is to ensure there is a *quid pro quo* for what the debtor gives. The *Krudy* decision also ignores binding Seventh Circuit authority

10

recognizing that repayment of a loan gives reasonably equivalent value for purposes of constructive fraudulent transfer law. *See B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474 (7th Cir. 2005). But the case has no relevance here anyway because it involved the repayment of debt to a lender, not an arms-length purchase of goods by a debtor.

Fraudulent conveyance law is grounded in equity and is designed to enable a trustee or creditors to avoid a transfer when the transferee received more from the debtor than the debtor received from the transferee. *Churchill Mort. Inv.,* 256 B.R. at 682 (Bankr. S.D.N.Y. 2000. It is not designed to turn every vendor into an insurer to creditors against corporate malfeasance. If the trustee could prevail on his constructive fraudulent transfer claim in this case, every party who sells goods could become in effect a guarantor of the debts of all purchasers who make inappropriate use of the purchased goods. That is not the law, nor should it be. Here, Mack got the supplies it paid for. It received reasonably equivalent value.

The trustee has not pled facts that support the essential element of lack of reasonably equivalent value.[1] Nor will the trustee be able to amend to fix this defect; the premise of his claim is faulty. The claim in Count I based on constructive fraud will be dismissed with prejudice.

---

[1] Ferguson also argues that the facts alleged support the conclusion that Mack received reasonably equivalent value in any event when the plumbing supplies were installed in properties owned by subsidiaries of the debtor. Value provided to a subsidiary can provide value to its parent. *See, e.g., Heritage Bank v. Steinberg (In re Grabill Corp.)*, 121 B.R. 983, 996 (Bankr. N.D. Ill. 1990); *Garrett v. Faulkner (In re Royal Crown Bottlers of N. Alabama, Inc.)*, 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982). This issue, however, raises factual questions that should not be resolved on a motion to dismiss.

3. Actual Fraud

Ferguson also argues that Count II must be dismissed because the trustee failed to plausibly allege a claim for fraudulent transfer based on actual fraud with the particularity required by Rule 9(b). As explained in *McClean* and *Peterson v. TTS Granite, Inc. (In re Mack Industries, Ltd.*), No. 19-ap-522 (Bankr. N.D. Ill. Nov. 10, 2019), the following standards apply to a motion to dismiss a fraud claim.

Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 8. A complaint must clear "two easy-to-clear hurdles" to satisfy Rule 8(a). *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough information to give the defendant "fair notice" of the claim. *See Reger Dev't. LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2019). The complaint need not make detailed factual allegations but there must be at least some facts supporting each element of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949-50 (2009). Second, the complaint must plausibly suggest that the plaintiff has a right to relief, raising that right above the speculative level. *Concentra*, 496 F.3d at 776. Satisfying this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . . A pleading that offers . . . a formulaic recitation of the elements of a cause of action will not do." *Id.* Put another way, "[t]hreadbare recitals of elements of cause of action, supported by mere conclusory statements, do not suffice." *Id*. Plaintiffs may not "merely parrot the statutory language of the claims they are pleading . . . rather than providing some specific facts to ground those legal claims . . . ." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

When alleging fraud, however, Rule 9(b) requires more. A plaintiff must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. Particularity means "the who, what, when, where and how: the first paragraph of any newspaper story." *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996). The particularity standard is "somewhat relaxed" for a bankruptcy trustee because he may lack information that the debtor would have. *See, e.g., In re Grube*, 500 B.R. 764, 776 (Bankr. C.D. Ill. 2013); *Marwil v. Oncale (In re Life Fund 5.1 LLC)*, No. 10-ap-42, 2010 WL 2650024 (Bankr. N.D. Ill. June 30, 2010). Nevertheless, the trustee must still comply with the "who, what, when, where and how test" of particularity. *See Life Fund 5.1*, 2010 WL 2650024 (fraudulent transfer claims filed by a trustee were dismissed for failure to plead the precise amount of the transfer, the date of the transfer, and the debtor from whose account the money was transferred).

Fraudulent intent may be shown through direct evidence or circumstantial evidence, often referred to as "badges of fraud." As explained in *Frierdich v Mottaz*, "[d]irect proof of actual intent to defraud is not required—indeed, it would be hard to come by—and a trustee can prove actual intent by circumstantial evidence." 294 F.3d 864, 869-70 (7th Cir. 2002). Courts often look to "badges of fraud" as circumstantial evidence. *Id*. These "badges" include: whether the debtor retained possession or control of the property after the transfer, whether the transferee shared a familial or other close relationship with the debtor, whether the debtor received consideration for the transfer, whether the transfer was disclosed or concealed, whether the debtor made the transfer before or after being threatened with suit by creditors, whether the transfer involved substantially all of the debtor's assets, whether the debtor absconded, and whether the debtor was or became solvent at the time of the transfer. *Id*.

Ferguson argues that the actual fraud claim in Count II does not pass muster under these standards.  It contends that the amended complaint contains only conclusory allegations about a fraudulent scheme to deplete Mack's assets and that there are no allegations connecting that general scheme to the transactions with Ferguson.  It also contends that the facts alleged do not support the trustee's contention that payments to Ferguson were part of this fraudulent scheme because the transactions began at least as early as November 2012, when Mack's relationship with American Residential was just beginning and long before the alleged threat in June 2014.  Ferguson also points out the inconsistency of the trustee contending that the payments to Ferguson were part of a fraudulent scheme perpetrated against American Residential when he also alleges that Mack installed some of the plumbing supplies in properties owned by American Residential.  Ferguson wryly notes, "Suffice it to say that is a poor scheme to defraud creditors by transferring one of its assets to them."  Motion at p. 13.

The trustee responds that he has not only alleged badges of fraud that provide circumstantial evidence of actual fraud, he has alleged an "actual admission" of Mack's fraudulent intent through the statement of Workman to Byce.

The trustee has stated a claim for actual fraud with particularity, but just barely.  The lynchpin of his claim is the alleged threat by Workman to Byce that if American Residential did not renegotiate the Agreement, Mack "would transfer its assets to related entities for nothing in return to hinder American Residential's ability to exercise its legal remedies as a creditor or

otherwise." Amended Complaint ¶ 30. The trustee has provided enough of the who, what, and when for this alleged statement to satisfy Rule 9(b).[2]

Ferguson argues that the trustee has failed to allege that Workman had authority to make that statement or act on it. The trustee counters that the court must make inferences in favor of the trustee on a motion to dismiss. The trustee is correct. The court must infer on a motion to dismiss that a vice president had the authority to make the alleged statement.

The trustee supported his allegation about the Workman threat with various other allegations regarding the scheme to defraud. These allegations, described in more detail above, include that (1) the McClellands began creating many new entities to conduct the kind of business Mack had previously conducted, (2) they transferred real property owned by Mack to these new entities for no consideration, (3) Mack "drew down" on its own assets to benefit the other entities, (4) Mack paid contractors to do work on properties owned by the other entities, (5) Mack paid the loans of other entities, (6) Mack concealed all of these actions from American Residential by failing to provide the quarterly income statements required under the Agreement, and (7) the McClellands "extracted" at least $10.7 million in cash from Mack and the other entities.

---

[2] The trustee also alleges another threat that Workman made to Byce - that Mack's "special relationships with local authorities in Cook County and surrounding areas would prevent American Residential from exercising management and control over its properties." Amended Complaint ¶ 31. This alleged threat does not support the trustee's claim of actual fraud. First, it is not plausible that any owner of hundreds of properties would take this threat seriously. If anything, the implausibility of this alleged threat undermines the trustee's position that the other threat by Workman - that the Mack's assets would be gutted - should be taken seriously. Second, in any event, this threat does not fit the trustee's theory that Mack intended to defraud by depleting its assets.

Some of these allegations could fall within the various badges of fraud discussed above.[3] None is made with any particularity or specifically connects the transactions with Ferguson to the allegedly fraudulent scheme. But taken together, assuming they are true and making all reasonable inferences in favor of the trustee, the allegations in the amended complaint are just enough to allege a plausible claim for actual fraud with sufficient particularity to survive a motion to dismiss.

Ferguson is correct that many of the transactions described in Attachment A to the amended complaint occurred before the Workman threat in June 2014 and that they in fact go back to November 2012, when Mack's relationship with American Residential was just beginning so Mack presumably had no fraudulent intent. The trustee has alleged, however, that the efforts to deplete assets began before the Workman threat, and the court must assume this is true and make all reasonable inferences in favor of the trustee. While the court need not make the unreasonable inference that Mack had fraudulent intent in November 2012, the month before it entered into its agreement with American Residential, it can be reasonably inferred that at some point before June 2014 Mack started acting with fraudulent intent. The court need not determine when that happened to conclude that the trustee stated a claim for at least some of the transactions alleged in the amended complaint.

Ferguson is also correct that the use of plumbing supplies in properties owned by American Residential undercuts the trustee's allegations that all the other transactions were made with fraudulent intent. Yet the court must make inferences in favor of the trustee and

---

[3]The allegations about the creation of new entities to hold newly purchased properties does not necessarily demonstrate a fraudulent intent, since the use of separate entities to hold different real properties is a widespread, legitimate business practice.

concludes that there is enough to allege a plausible claim based on actual fraudulent intent despite this obvious weakness in the trustee's argument. While Ferguson may be able to show many inconsistencies in the facts alleged by the trustee, on a motion to dismiss, the trustee gets the benefit of the doubt.

The facts alleged in the amended complaint are not compelling but they are just sufficient for the trustee to proceed with his claim based on actual fraud. The motion to dismiss the claim for fraudulent transfer based on actual fraud in Count II will be denied.

4.  Preference Claim

Ferguson argues that the preference claim in Count III must be dismissed for failure to state a claim. It contends that the trustee has failed to allege that Ferguson was a creditor of Mack and he has failed to identify the specific antecedent debt that was paid through the transfers. Ferguson is correct.

As discussed in *McClean*, to state a claim to avoid a preferential transfer under § 547 of the Bankruptcy Code, the trustee must allege that there was a transfer of an interest of the debtor in property that (1) was made to or for the benefit of a creditor, (2) was for or on account of an antecedent debt, (3) was made while the debtor was insolvent, (4) was made on or within 90 days before the date of the filing of the petition, and (5) allowed the creditor to receive more than it otherwise would have in this case. 11 U.S.C. § 547(b); *Warsco v. Preferred Tech. Group,* 258 F.3d 557, 564 (7th Cir.2001); *Homann v. R.I.H. Acquisitions IN, LLC (In re Lewinski)*, 410 B.R. 828, 831-32 (Bankr. N.D. Ind. 2008).

A preference complaint must allege more than just the statutory elements of a preference claim. *Miller v. Mitsubishi Digital Elecs. Am. Inc. (In re Tweeter Opco)*, 452 B.R. 150, 151 (Bankr. D. Del. 2011); *Official Comm. of Unsecured Creditors v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010). Rule 8(a)(2) requires, at a minimum, that the complaint identify the transferor of an allegedly preferential transfer, provide detail regarding the date and amount of the alleged transfers, and identify a specific antecedent debt owed by the debtor to the defendant at the time of the transfer. *See, e.g., Tweeter Opco*, 452 B.R. at 154–55 (holding that the complaint must identify the transferor); *Angell v. Ber Care, Inc. (In re Careamerica, Inc.)*, 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) (failure to identify which entity initiated each transfer and to allege facts regarding the antecedent debt were fatal to preference claim). When describing the antecedent debt, the complaint should provide at least some factual information about any agreements between the parties and the goods or services exchanged. *Official Comm. of Unsecured Creditors v. Indep. Purchasing Cooperative, Inc. (In re Quantum Foods, LLC)*, 558 B.R. 111, 115 (Bankr. D. Del. 2016).

Here, the amended complaint states that Mack made "several" transfers from its bank accounts to Ferguson in the 90 days before filing bankruptcy and it identifies two transfers: $13,405 on January 30, 2017 and $9,541 on February 27, 2017. Amended Complaint ¶ 107. It then states: "To the extent the Debtor was liable for the Ferguson invoices, Ferguson was a creditor of the Debtor and the monies owed to it were for an antecedent debt." Amended Complaint ¶ 109. As in the original complaint, the trustee fails to identify the antecedent debt for which the payments were allegedly made. And the "to the extent" allegation in Paragraph 109 fails to allege even that Ferguson was a creditor.

The trustee responds that Ferguson, an $18 billion dollar company, should be able to figure out which invoices the trustee claims were paid by the two payments identified in Paragraph 107. This is not correct. The trustee must specifically identify the invoices he claims were paid through the two payments identified in Paragraph 107. Ferguson is not required to guess at which invoices the trustee contends were paid from a 112-page exhibit listing thousands of invoices. The trustee attached a list of the invoices he claims were paid through the two transfers in question as an attachment to his response to the motion. That is not good enough. He failed to comply with Rule 8(a) and his "you figure it out" response is rejected.

The preference claim in Count III will be dismissed. On this claim, however, the trustee will be granted leave to amend within 30 days of entry of the order on Ferguson's motion to dismiss.

5. Conclusion

The motion to dismiss the claim in Count I for fraudulent transfer based on constructive fraud will be granted. The claim will be dismissed with prejudice.

The motion to dismiss the claim in Count II for fraudulent transfer based on actual fraud will be denied.

The motion to dismiss the preference claim in Count III will be granted. The trustee is granted leave to amend this claim within 30 days.

ENTERED:

Dated: November 10, 2020

Carol A. Doyle
United States Bankruptcy Judge